IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCOS ANTONIO BARRERAS,

   Plaintiff,

v.              CV 15-352 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

   Defendant.

## MEMORANDUM OPINION AND ORDER

Marcos Antonio Barreras applied for supplemental security income on December 19, 2007, based on a bullet in his spine, a broken collarbone, hernias, Hepatitis C, arthritis, ulcers, and depression. (Administrative Record "AR" 129, 309.) After his application was denied at all administrative levels, Barreras filed his Motion to Reverse and Remand for a Rehearing. (Doc. 19.) The Commissioner of the Social Security Administration ("SSA") filed a response (Doc. 22) and Barreras filed a reply (Doc. 23). For the reasons explained below, I grant Barreras's motion to remand and remand this case to the SSA for further proceedings consistent with this opinion.

### STANDARD OF REVIEW

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 416.920(a)(4),  & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of

performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. § 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### FACTUAL BACKGROUND

Barreras is a fifty-two-year-old man with a tenth-grade education. (AR 28, 54, 280, 313.) Barreras previously worked as a busser, a cook, a janitor, a landscaper, and as a general laborer at a temporary services company, a construction company, and a brick company. (AR 310). Barreras claims disability beginning on December 1, 2007, based on a bullet in his spine, a broken collarbone, hernias, Hepatitis C, arthritis, ulcers, and depression. (AR 309.)

I do not address everything in the record, but rather target my discussion to the facts necessary to the disposition of this case.

Barbara May-Valencia, Ph.D., saw Barreras on March 27, 2008, for a psychological consultative examination. (AR 374.) Dr. May-Valencia performed a mental status examination and found that Barreras has a sad, tearful affect, and problems remembering events and dates in the past, is very forgetful in the short term, and has problems with task completion and keeping appointments. (AR 376.) She found that Barreras is in the low-average range of intellectual functioning, with poor task completion, fair judgment, and poor insight. (*Id.*) Dr. May-Valencia

also performed objective testing and gave Barreras the Wechsler Adult Intelligence Scale-II exam and the Wechsler Adult Intelligence Scale-III subtest. Objective testing revealed that Barreras's working memory index is better than only 9% of his peers, while he exceeds only 10% of his peers on the processing speed index. (*Id.*) Dr. May-Valencia described a diagnostic impression of depressive disorder, not otherwise specific, alcohol dependence, and a GAF of 46.[1] (*Id.*) Dr. May-Valencia noted that Barreras may benefit from a full psychological evaluation as well as individual counseling, may benefit from rehabilitative treatment to stop drinking, needs a full medical workup and consistent treatment, and is capable of managing his own benefits. (*Id.*) Finally, she concluded that Barreras's results appeared valid. (*Id.*)

State agency psychological consultant Scott R. Walker, M.D., reviewed Barreras's medical file on March 31, 2008. (AR 383.) Dr. Walker then completed a Psychiatric Review Technique Form ("PRTF") (*id.*) and a Mental Residual Functional Capacity Assessment ("MRFCA") (AR 397).

In the PRTF, Dr. Walker noted that Barreras's mental impairments came under Listing 12.04 Affective Disorders and Listing 12.09 Substance Abuse Disorders. (AR 383.) Dr. Walker assessed Barreras with a depressive disorder, not otherwise specified, and a substance abuse disorder that caused behavioral or physical changes associated with the regular use of substances that affect the central nervous system. (AR 386, 391.) Dr. Walker concluded that Barreras's substance abuse disorder should be evaluated under Listing 12.04 Affective Disorders. (AR 391.) With regard to Paragraph B criteria, Dr. Walker found that Barreras experienced mild limitations

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between forty-one and fifty is assessed when the patient is believed to have "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Barreras's mental health providers used this scoring method.

in his activities of daily living, moderate limitations maintaining social functioning, and moderate limitations maintaining concentration, persistence or pace. (AR 393.) Barreras had no episodes of decompensation in his record. (*Id.*)

In the MRFCA, Dr. Walker found that Barreras experienced moderate limitations in the following areas: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 397-98.) Dr. Walker found it reasonable that Barreras can understand, remember, and carry out simple instructions; make simple work-related decisions; attend and concentrate for two hours at a time; interact adequately with co-workers and supervisors; and respond appropriately to changes in a routine work setting. (AR 399.)

### THE ALJ AND APPEALS COUNCIL'S DECISIONS

This case has proceeded through several layers of administrative review: the ALJ held hearings on December 16, 2009, December 9, 2010, and February 13, 2013 (AR 36-68, 71-79, 105-27), and issued decisions on January 3, 2011, and July 17, 2013 (AR 18-30, 131-41). The Appeals Council determined that the ALJ committed errors of law and remanded the case to the ALJ on April 26, 2012, with instructions to obtain, if warranted, additional evidence. (AR 146-49.) The Appeals Council denied review on March 4, 2015. (AR 1.)

The operative decision in this case is the ALJ's July 17, 2013, decision. (AR 18.) The ALJ found that Barreras had not engaged in substantial gainful activity since December 19, 2007, and suffered from the severe impairments of back pain, alcohol dependence, status post open reduction internal flexion ("ORIF") right knee in June 2012, and depression. (AR 23.) While the ALJ recognized that Barreras was diagnosed with Hepatitis C, she found that Barreras had no medical treatment for the condition and no evidence of significant limitations associated therewith, rendering Hepatitis C a non-severe impairment. (AR 23.)

At step three, the ALJ concluded that Barreras did not have an impairment or combination of impairments that met a Listing. (AR 24.) Specifically, the ALJ found that Barreras experienced mild restrictions in activities of daily living, but was able to perform these activities independently and appropriately; moderate difficulties in social functioning, because he tends to isolate and does not like being around others, but was able to relate appropriately to the consultative examiners; mild difficulties with concentration, persistence or pace, because he had some errors in memory tasks, but was fully oriented with linear thoughts and maintained the ability to give a good oral history and was able to attend and concentrate for two hours at a time; and no episodes of decompensation. (AR 24-25.)

At phase one of step four, the ALJ found that Barreras had the RFC to perform sedentary work, except that he can only occasionally climb stairs and can only occasionally balance and stoop; Barreras can do no kneeling, crouching, or crawling; and is limited to jobs that require only occasional interaction with the public, and only occasional and superficial contact with co-workers. (AR 25.) In support of her RFC determination, the ALJ summarized Barreras's hearing testimony and found him only partially credible. (AR 26.) The ALJ then discussed Barreras's medical records related to his physical impairments and mental impairments. (AR 26-28.) With

6

regard to Barreras's mental impairments, the ALJ noted that Barreras had no ongoing psychiatric treatment or counseling for mental health symptoms and was not taking antidepressants. (AR 28.) The ALJ summarized Dr. May-Valencia's findings, but found the GAF rating "of limited evidentiary value" because it is a "subjectively assessed" "snapshot[] of impaired and improved behavior and there is nothing in the medical records to support such a restricted GAF code." (AR 27.) The ALJ then gave little weight to Dr. May-Valencia's opinion.[2] (AR 27-28.)

Next, the ALJ discussed, though not by name, Dr. Walker's opinion. She noted that Dr. Walker completed a PRTF and found that Barreras was able to understand, remember, and carry out simple instructions; make simple decision; attend and concentrate for two hours a time; interact adequately with coworkers and supervisors; and respond appropriately to changes in a routine work setting. (AR 28.) The ALJ gave Dr. Walker's opinion "[s]ignificant weight . . . as it is more consistent with [Barreras's] overall daily functioning and the record as a whole." (*Id.*) The ALJ did not mention Dr. Walker's MRFCA, but did acknowledge that a nontreating, nonexamining physician's opinion cannot be given controlling weight. (*Id.*)

The ALJ then determined that, based on his RFC, Barreras was unable to perform any of his past relevant work, including work as a cleaner/housekeeper, construction worker, dining room attendant, yard worker, and brick-setter. (*Id.*) Finally, the ALJ relied on testimony from a vocational expert to determine that Barreras could adjust to other work. Therefore, the ALJ concluded that Barreras is not disabled. (AR 29-30.)

## DISCUSSION

Barreras argues that the ALJ erred at step four by accepting some of the moderate limitations identified by Dr. Walker, and according his opinion significant weight, while

---

[2] At this point, the ALJ also recognized that Barreras requested a new psychological consultative examination at the February 19, 2013, hearing, but declined this request. (AR 28.)

rejecting other moderate limitations without discussion. Additionally, Barreras contends that the Appeals Council committed legal error by determining that evidence Barreras submitted to the Appeals council was not new, material, and chronologically pertinent. Because I agree that the ALJ improperly rejected some of the moderate limitations imposed by Dr. Walker, without discussion, I do not reach Barreras's claim of error by the Appeals Council.

An ALJ errs when she "accept[s] some of the moderate limitations in the Mental RFC form completed by . . . a nonexamining physician, but reject[s] others without discussion." *Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Barreras argues that the ALJ erred by failing to discuss or include in the RFC Dr. Walker's findings that Barreras was only able to handle simple instructions and make simple decisions, and the moderate limitation on Barreras's ability to interact appropriately with supervisors. The Commissioner responds that Barreras's dispute is with the ALJ failing to include in her mental RFC finding the Paragraph B criteria ratings (such as mild limitations on activities of daily living) and that it was not error for the ALJ to not include Dr. Walker's PRTF findings in the RFC.

The Commissioner misapprehends the argument and the record. Barreras's claim of error is that the ALJ did not include all of the moderate limitations identified in Dr. Walker's MRFCA in the RFC, despite granting Dr. Walker's opinion significant weight. While the Commissioner is correct that the ALJ's RFC determination is consistent with Dr. Walker's opinion, to the extent that it addresses the opinion, the ALJ impermissibly rejected, without discussion, several moderate limitations imposed by Dr. Walker.

Dr. Walker assessed Barreras with moderate limitations on his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and

8

concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 397-98.) The ALJ's RJC determination states that Barreras can perform sedentary work with additional exertional limitations, and is "limited to jobs that require only occasional interactions with the [public], and only occasional and superficial contact with co-workers." (AR 25.)

An ALJ may not pick and choose sections of an uncontroverted medical opinion, and reject some portions of that opinion without discussion. *Hamlin*, 365 F.3d at 1219. The ALJ did not address in her RFC or discuss elsewhere in her decision the moderate limitation on Barreras's ability to understand, remember, or carry out detailed or complex instructions or the moderate limitation on his ability to accept instructions from and respond appropriately to criticism from supervisors. The ALJ's failure to include these limitations in the RFC determination constitutes a rejection of the limitations. The ALJ therefore rejected part of Dr. Walker's opinion without discussion. This constitutes reversible error. *Frantz*, 509 F.3d at 1302-03; *Haga*, 482 F.3d at 1208.

Because I find reversible error in the ALJ's treatment of Dr. Walker's opinion, I do not reach Barreras's claim of error by the Appeals Council.

## CONCLUSION

As explained above, the ALJ impermissibly rejected certain moderate limitations imposed by Dr. Walker without explaining that rejection. On remand, the ALJ will either

incorporate all of the moderate limitations imposed by Dr. Walker, or will adequately discuss and explain those limitations she rejects.

It is so ordered.


William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.